**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 16-4226

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

DAVID PATRICK DIAZ,

Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria.  Anthony J. Trenga, District Judge.  (1:15-cr-00324-AJT-1)

Argued:  March 24, 2017                                    Decided:  July 26, 2017
                          Amended:  July 31, 2017

Before FLOYD and HARRIS, Circuit Judges, and John Preston BAILEY, United States District Judge for the Northern District of West Virginia, sitting by designation.

Vacated and remanded by published opinion.  Judge Floyd wrote the opinion, in which Judge Harris and Judge Bailey joined.

**ARGUED:** Patrick L. Bryant, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Alexandria, Virginia, for Appellant.  Jon Tyler McGaughey, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.  **ON BRIEF:** Geremy C. Kamens, Federal Public Defender, Brooke S. Rupert, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Alexandria, Virginia, for Appellant.  Dana J. Boente, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.

FLOYD, Circuit Judge:

Appellant David Diaz rushed the cockpit of a flight approximately 45 seconds after takeoff from Washington Dulles International Airport. After pleading guilty in an open plea to violating 49 U.S.C. § 46504, interference with flight crew members and attendants, the district court was tasked with deciding whether to impose restitution, and, if imposed, how much restitution would be appropriate. The government argued that this offense fell within the scope of the Mandatory Victims Restitution Act (MVRA), 18 U.S.C. § 3663A, such that Diaz was required to pay the full amount of restitution calculated in his presentence report. Diaz argued instead that his crime was covered by the Victim and Witness Protection Act (VWPA), 18 U.S.C. § 3663, and thus the district court retained discretion in deciding whether to impose restitution and the amount of restitution it would require Diaz to pay. The district court agreed with the government, found that the MVRA applied, and ordered Diaz to pay the full amount of restitution. Diaz appealed, and we now vacate the order of restitution, finding that the VWPA applies because interference with a flight crew is not categorically a crime of violence as defined by 18 U.S.C. § 16.

I.

A.

In early 2015, David Diaz was living in Northern Virginia with his father and suffering from a declining mental state. Deciding that it would be best to send Diaz to live with his mother in Texas, Diaz's father bought him a plane ticket to depart on March

2

15, 2015, from Washington Reagan National Airport. Diaz felt extreme anxiety and paranoia about flying, and would self-medicate with alcohol. Diaz boarded the flight, but was too nervous to stay in his seat and remain on the plane, and so he voluntarily deplaned. Diaz tried again to fly on the morning of March 16, 2015, from Reagan National Airport, but again was too nervous and again voluntarily deplaned after boarding.

Determined to reach his mother in Texas who was expecting him, Diaz boarded a third flight on March 16, 2015, operated by United Airlines, departing from Washington Dulles International Airport bound for Denver, Colorado. At the time he boarded the flight, Diaz was intoxicated. Approximately 45 seconds after takeoff, Diaz left his seat and rushed toward the cockpit. According to witnesses, he yelled that the plane was going too slowly, was going down, and was shooting flames. Diaz also reportedly shouted about jihad, a bomb, and that there was "something in the belly of the plane." J.A. 28–29. Other passengers tackled Diaz and attempted to restrain him, but he resisted. The pilots returned the flight to Dulles approximately thirteen minutes after takeoff. Feeling too upset to continue working, the flight attendants would not re-board the plane. As a result, the flight was canceled and passengers were re-booked onto other flights. Diaz has no independent recollection of the incident due to his intoxication, but does not dispute the statements or their effect on passengers and crew.

A grand jury in the Eastern District of Virginia indicted Diaz on one count of interference with flight crew members and attendants, in violation of 49 U.S.C. § 46504. Diaz then pleaded guilty to the offense without having a plea agreement in place.

3

B.

Before discussing the proceedings below imposing restitution, a brief discussion of the restitution scheme in criminal offenses is necessary to understand the issues in this appeal. Two different statutes are relevant here: 18 U.S.C. § 3663, which we refer to as the Victim and Witness Protection Act (VWPA), and 18 U.S.C. § 3663A, which we refer to as the Mandatory Victims Restitution Act (MVRA).

Under the VWPA, restitution is discretionary. 18 U.S.C. § 3663(a)(1)(A). The VWPA requires that the court consider "the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents, and such other factors as the court deems appropriate" in determining whether to order restitution. *Id.* § 3663(a)(1)(B)(i)(II). The VWPA states that it will apply "when sentencing a defendant convicted of an offense under . . . section . . . 46504 of title 49" unless the offense is "an offense described in section 3663A(c)." *Id.* § 3663(a)(1)(A).

In contrast, the MVRA requires—as its name implies—mandatory restitution. *Id.* § 3663A(a)(1). As relevant to this appeal, the MVRA applies for any offense "(A) that is (i) a crime of violence, as defined in section 16 [of title 18] . . . *and* (B) in which an identifiable victim or victims has suffered a physical injury or pecuniary loss." *Id.* § 3663A(c)(1) (emphasis added).

C.

U.S. Probation Services determined in Diaz's presentence report (PSR) that United Airlines suffered a loss of $22,151.77 as a result of Diaz's criminal conduct, and

4

recommended an order of restitution in that amount.  The PSR also noted that Diaz's financial condition made him unable to pay a fine or costs.  *See* Appellant's Br. at 5.  However, the PSR did not indicate the statutory basis for restitution.

The government in its sentencing position paper did not mention restitution, only requesting that Diaz receive a guidelines range sentence.  Diaz submitted that the offense fell within the scope of the VWPA.  As such, Diaz argued restitution was not mandatory, and requested the court consider his financial situation under the VWPA.  He also "suggested that a restitution amount of $10,869 was more appropriate in light of United's direct costs and Mr. Diaz's financial condition" if the court determined to order restitution.  Appellant's Br. at 5.

At the sentencing hearing, for the first time, the government argued that the MVRA applied instead of the VWPA.  The government first argued that flight crew interference in violation of 49 U.S.C. § 46504 was a crime of violence under 18 U.S.C. § 3663A(c)(1)(A)(i).  However, the government then argued:  "But it doesn't even matter because Your Honor doesn't even have to find that because under 3663A(c)(1)(B), the Mandatory Victims Restitution Act applies to any offense in which an identifiable victim has suffered pecuniary loss."  J.A. 53.

The court agreed with the government's argument and held, "it appears to the Court that restitution is mandatory in this case under 3663A(c)(1)(B), which requires restitution whenever there's an identifiable victim that suffered a pecuniary loss."  J.A. 56–57.  The court never ruled on the issue of whether flight crew interference was a

5

crime of violence as defined by 18 U.S.C. § 16. As a result, the court ordered Diaz to pay the full amount of $22,151.77 as restitution as part of Diaz's sentence.

Diaz timely noted this appeal, and appeals only the restitution order. We have jurisdiction pursuant to 18 U.S.C. § 3742(a)(1) and 28 U.S.C. § 1291.

## II.

We review restitution ordered generally for abuse of discretion, but "assess de novo any legal questions raised with respect to restitution issues, including matters of statutory interpretation." *United States v. Ocasio*, 750 F.3d 399, 412 (4th Cir. 2014) (citations omitted).

## III.

### A.

Diaz raises a threshold question that we must answer before reaching further questions in this appeal: whether it is possible for a crime presumptively covered by the VWPA to instead fall within the scope of the MVRA. This is a straightforward question of statutory interpretation with a clear answer—yes.

Diaz's sole argument is that Congress placed flight crew interference within the VWPA when it was first enacted, and did not indicate that flight crew interference should fall under the MVRA when passing the legislation later creating the MVRA. He submits that "[t]his deliberate placement of § 46504 into the VWPA and not the MVRA is the best indication that Congress intended the VWPA to apply to convictions under § 46504." Appellant's Br. at 12. However, this argument flies in the face of the actual

6

statutory language. Diaz is correct that flight crew interference is an enumerated offense to which the VWPA presumptively applies; however, the VWPA also clearly provides that if the offense is covered by 18 U.S.C. § 3663A(c), then the MVRA will apply. *See* 18 U.S.C. § 3663(a)(1)(A).[1]

Thus, it is clear that the MVRA may apply in determining restitution for a defendant who interferes with a flight crew in violation of 49 U.S.C. § 46504, but only if it is determined that flight crew interference falls within the scope of 18 U.S.C. § 3663A(c).

B.

Accordingly, the next issue is how to interpret 18 U.S.C. § 3663A(c). The question presented to us is whether this section of the MVRA, specifically § 3663A(c)(1), is disjunctive or conjunctive. Again, this is a straightforward question of statutory interpretation with a clear answer—conjunctive. The district court below erred in interpreting the statute as disjunctive.

The MVRA in § 3663A(c)(1) makes clear that for an offense to fall within the MVRA, the offense must satisfy § 3663A(c)(1)(A) *and also* satisfy the requirement of § 3663A(c)(1)(B) by using the word "and" to connect the provisions of § 3663A(c)(1)(A) and (B). We have never addressed this specific issue; however, a decade before

---

[1] The Seventh Circuit has also noted this in passing. *See United States v. Frith*, 461 F.3d 914, 919 (7th Cir. 2006) (noting that the VWPA "cover[s] restitution . . . for offenses under . . . 49 U.S.C. §§ 46312, 46502 & 46504 except when the MVRA applies").

sentencing in this case, one of our sister circuits squarely rejected the argument accepted

by the district court:

> Notwithstanding the word "and," the government invites us to read subsections (A) and (B) in the disjunctive; under the government's theory, restitution applies if the defendant committed an offense enumerated under (A) *or* if "an identifiable victim or victims has suffered a physical injury or pecuniary loss" under (B). The government's interpretation does violence to the statutory text. Under the plain terms of section 3663A, restitution is available only if the defendant meets *both* (A) and (B).

*United States v. Dorcely*, 454 F.3d 366, 376 n.7 (D.C. Cir. 2006) (citations omitted)

(emphases in original). The conclusion of the D.C. Circuit is sound, and we adopt it in

full.[2]

### C.

Finally, we reach the heart of the appeal, which requires us to determine whether

the MVRA or the VWPA applies to Diaz. We conclude that flight crew interference in

violation of 49 U.S.C. § 46504 is not a crime of violence, and thus cannot satisfy 18

U.S.C. § 3663A(c)(1)(A). Accordingly, the VWPA must apply here.

---

[2] The parties dispute whether Diaz preserved this claim and therefore whether we should review this issue of statutory interpretation de novo or under the plain error standard. Because we would vacate under either standard, we need not decide whether Diaz preserved this issue. We do note, however, that it was the government that propounded this incorrect legal theory to the court below, raising it for the first time at oral argument before the district court. It seems somewhat disingenuous for the government to now argue that Diaz should have realized the government's error in misinterpreting the plain conjunctive meaning of the word "and" within § 3663A(c)(1). We are reminded that "while [the prosecutor] may strike hard blows, he is not at liberty to strike foul ones." *Berger v. United States*, 295 U.S. 78, 88 (1935).

As just explained, an offense must satisfy *both* 18 U.S.C. § 3663A(c)(1)(A) and (B) in order for the MVRA to apply.  The district court found § 3663A(c)(1)(B) satisfied, but made no ruling as to § 3663A(c)(1)(A).  Diaz has not challenged the finding with respect to § 3663A(c)(1)(B), but submits that as a matter of law, flight crew interference cannot satisfy § 3663A(c)(1)(A).

An offense may satisfy § 3663A(c)(1)(A) in four different ways.  As relevant here, § 3663A(c)(1)(A) is met when the offense of conviction is "a crime of violence as defined in [18 U.S.C.] section 16."  18 U.S.C. § 3663A(c)(1)(A)(i).[3]  Section 16 then defines a "crime of violence" as:  "(a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."  18 U.S.C. § 16.  Section 16(a) is known as the "force clause," and § 16(b) is known as the "residual clause."

In determining whether a crime constitutes a crime of violence, we employ the categorical approach, "'look[ing] only to the statutory definitions'—i.e., the elements— of a defendant's [crime] and *not* 'to the particular facts underlying [that crime]."  *Descamps v. United States*, 133 S. Ct. 2276, 2283 (2013) (quoting *Taylor v. United States*, 495 U.S. 575, 600 (1990)).  However, "in cases involving statutes that set out

---

[3] The parties do not contend that any of the other options under 18 U.S.C. § 3663A(c)(1)(A)(ii)–(iv) could be applicable.

9

elements in the alternative and thus create multiple versions of the crime," we consider the statute divisible and apply the modified categorical approach. *United States v. Montes-Flores*, 736 F.3d 357, 365 (4th Cir. 2013) (internal quotation marks omitted). An indivisible statute, on the other hand, "does not set out elements of the offense in the alternative, but . . . may nevertheless broadly criminalize qualitatively different categories of conduct." *United States v. Royal*, 731 F.3d 333, 340 (4th Cir. 2013).

1.

First, we must determine if the statute is divisible in order to decide whether we use the strict categorical approach or the modified categorical approach. The statute in question provides:

> An individual on an aircraft in the special aircraft jurisdiction of the United States who, by *assaulting or intimidating* a flight crew member or flight attendant of the aircraft, interferes with the performance of the duties of the member or attendant or lessens the ability of the member or attendant to perform those duties, or attempts or conspires to do such an act, shall be fined under title 18, imprisoned for not more than 20 years, or both.

49 U.S.C. § 46504 (emphasis added). The dispute between Diaz and the government is whether the phrase "assaulting or intimidating" creates different elements or different means. For the reasons that follow, the statute creates different means, making the statute indivisible and the modified categorical approach inapplicable.

"[U]se of the word 'or' in the definition of a crime does not automatically render the crime divisible." *Omargharib v. Holder*, 775 F.3d 192, 198 (4th Cir. 2014) (citing *Royal*, 731 F.3d at 341–42). Rather, "a crime is divisible under *Descamps* only if it is defined to include multiple alternative *elements* (thus creating multiple versions of a

10

crime), as opposed to multiple alternative *means* (of committing the same crime)." *Id.* (citations omitted). "Alternative elements of a crime, as opposed to alternative means of committing a crime, are 'factual circumstances of the offense that the jury must find unanimously and beyond a reasonable doubt.'" *United States v. Gardner*, 823 F.3d 793, 802 (4th Cir. 2016) (quoting *Omargharib*, 775 F.3d at 198). "Therefore, when determining the divisibility of a crime, we may consider how 'courts generally instruct juries with respect to that offense.'" *Id.* (quoting *Royal*, 731 F.3d at 341).

Looking to model jury instructions, we have found three sources that include the offense of flight crew interference in violation of 49 U.S.C. § 46504: (1) a national treatise; (2) model instructions from a district court; and (3) model instructions from a circuit court. First, the treatise *Modern Federal Jury Instructions—Criminal* sets out the elements the government must prove as:

> First, that at the time alleged in the Indictment, defendant was on an aircraft in the special aircraft jurisdiction of the United States;

> Second, that defendant knowingly assaulted or intimidated a flight crew member or flight attendant of the aircraft; and

> Third, that such assault or intimidation interfered with the performance of the flight crew member or flight attendant or lessened the ability of the crew member or attendant to perform his or her normal duties.

1-13 *Modern Federal Jury Instructions—Criminal*, ¶ 13.02, Instruction 13-9 (Matthew Bender) [hereinafter *Modern Instructions*].

The District of South Carolina also provides a model jury instruction that includes "assaulted or intimidated" in the second element. Eric Wm. Ruschky, *Pattern Jury Instructions for Federal Criminal Cases, District of South Carolina* 600 (Emily Deck

11

Harrill, ed., 2015 online ed.) [hereinafter *D.S.C. Instructions*], *available at* http://www.scd.uscourts.gov/pji.

Finally, only one circuit court offers a model instruction on this offense—the Eleventh Circuit. The model instructions indicate that the jury should be charged that "the Defendant knowingly [assaulted] [intimidated] a flight crew member or flight attendant of the aircraft." Comm. on Pattern Jury Instructions of the Jud. Council of the Eleventh Circuit, *Eleventh Circuit Pattern Jury Instructions (Criminal Cases)*, Instruction 118 (2010 ed.) [hereinafter *11th Circuit Instructions*], *available at* http://www.ca11.uscourts.gov/sites/default/files/courtdocs/clk/FormCriminalPatternJury Instruction.pdf (brackets indicate options, not alterations). Thus, the models are in minor tension, with the treatise and *D.S.C. Instructions* indicating that both assault and intimidation should be charged, and the *11th Circuit Instructions* appearing to indicate only one or the other should be charged.

Turning to case law interpreting the statute, in an unpublished opinion, we have held that "to sustain a conviction under [49 U.S.C. § 46504], the government must prove that [the defendant]: (1) interfered with, or lessened the ability of the . . . flight attendants to perform their respective duties on the . . . flight by; (2) *assaulting or intimidating* them." *United States v. Gilady*, 62 F. App'x 481, 483 (4th Cir. 2003) (per curiam) (emphasis added).[4] The Ninth Circuit has also utilized this formulation of the elements

---

[4] The defendant's argument related to restitution in *Gilady* was abandoned at oral argument. 62 F. App'x at 482 n.*.

of the offense in a published opinion. *See United States v. Naghani*, 361 F.3d 1255, 1262 (9th Cir. 2004) ("The elements of the offense of intimidation in violation of § 46504 are: the defendant (1) was on an aircraft in the special aircraft jurisdiction of the United States; (2) *assaulted or intimidated* a flight attendant or flight crew member; and (3) in doing so, interfered with the performance of the duties . . . ." (emphasis added)). Additionally, in another unpublished case, we have cited favorably to the Ninth Circuit's recitation of the elements of flight crew interference. *See United States v. Persing*, 318 F. App'x 152, 154 (4th Cir. 2008) (per curiam) (citing *Naghani*, 361 F.3d at 1262). Thus, the case law dealing with the statute weighs in favor of treating the statute as indivisible, and treating "assault or intimidation" as different means and not different elements.

The government argues that under *Mathis v. United States*, 136 S. Ct. 2243, 2256–57 (2016), we should "peek at the record" to determine whether the statute is divisible. However, the Supreme Court only recommends this in the absence of "clear answers" from case law and other sources. *Id.* at 2256. The case law, national treatise, and *D.S.C. Instructions* create sufficient consensus for us to find the "clear answer" is that assault and intimidation are different means of accomplishing the same element of the offense, such that we should not "peek at the record" under *Mathis*.

Finally, the government argues that it often does not charge both assault and intimidation, only opting for one or the other, providing further proof that these are elements and not means. The government also argues that in other cases, district courts have instructed juries that they must unanimously find which of the two acts a defendant has committed—intimidation or assault—when the government charges both. This, the

13

government submits, is proof that intimidation or assault are different elements rather than different means, otherwise the district courts would not instruct the jury to find one or the other unanimously.

While somewhat persuasive, we do not think the government's choices in how it charges the offense of flight crew interference should dictate our legal interpretation of the statute. Further, without more context as to how the district courts have determined to give a unanimity charge, we do not find those instructions helpful. Indeed, in direct contrast to the government's cited district court instructions, the Ninth Circuit has noted with approval a district court charging a jury that "the government must prove that the defendant knowingly and intentionally performed an act of *assault, threat, or intimidation*." *United States v. Tabacca*, 924 F.2d 906, 911 n.6 (9th Cir. 1991) (emphasis added).[5] We instead find that the plain textual meaning of the statute, the case law, and the secondary sources counsel finding the statute to be indivisible.

Additionally, recent precedent from this Court addressing the divisibility of Virginia common law robbery supports a finding of indivisibility here. In *United States v. Winston*, 850 F.3d 677 (4th Cir. 2017), we concluded that Virginia common law robbery, which proscribes "taking, with intent to steal, of the personal property of

_____

[5] At the time of the *Tabacca* decision, the aircrew interference offense was codified at 49 U.S.C. § 1472(j) (1988) and proscribed interference by one who "assaults, intimidates, or threatens." The "threatens" language was removed from the statute in 1994 when the offense was re-codified at 49 U.S.C. § 46504. *See* Act of July 5, 1994, Pub. L. No. 103-272, § 1(e), 108 Stat. 745, 1244. The official U.S. Code published that year explains, "[t]he words 'or threatens' are omitted as being included in 'intimidating'." 49 U.S.C. § 46504 note (1994) (historical and revision notes).

14

another, from his person or his presence, against his will, *by violence or intimidation*,"" was indivisible. *Winston*, 850 F.3d at 683–84 (quoting *Pierce v. Commonwealth*, 138 S.E.2d 28, 31 (Va. 1964)) (emphasis added). We fail to see how the statute at issue here is any different from the formulation of common law robbery in Virginia.

Therefore, we find flight crew interference in violation of 49 U.S.C. § 46504 to be an indivisible offense for the purposes of the categorical approach.

2.

Having found the offense indivisible, we now evaluate whether it is a crime of violence under 18 U.S.C. § 16. The government at sentencing argued only that flight crew interference satisfied the force clause, and made no argument under the residual clause. However, the government now argues that we can look to the residual clause and affirm the district court on alternative grounds. As explained below, we reject the government's position under the force clause, and find that the government has waived the residual clause argument. We therefore find that the flight crew interference in violation of 49 U.S.C. § 46504 is not a crime of violence as defined by the force clause of 18 U.S.C. § 16(a).

a.

In order for a crime to qualify as a crime of violence under the force clause, it must require "the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 16(a). The "physical force" contemplated by 18 U.S.C. § 16(a) has been defined by the Supreme Court to mean "*violent* force—that is,

15

force capable of causing physical pain or injury to another person." *Johnson v. United States* (*Johnson I*), 559 U.S. 133, 140 (2010). In making the determination of whether the offense meets the requirements of the force clause, "we focus on 'the minimum conduct necessary for a violation.'" *Gardner*, 823 F.3d at 803 (quoting *Castillo v. Holder*, 776 F.3d 262, 267 (4th Cir. 2015)). "Such minimum culpable conduct includes any conduct to which there is a 'realistic probability, not a theoretical possibility'" against which the law would be enforced. *Id.* (quoting *Moncrieffe v. Holder*, 133 S. Ct. 1678, 1684–85 (2013)).

Having found flight crew interference to be indivisible, we can resolve this case by analyzing only the "assault" means of the offense.[6] "Assault" as used in the flight crew interference offense does not meet the requirement of *Johnson I* that it be accomplished with violent force. Although the government argues that the "assault" contemplated by § 46504 "was only intended to criminalize serious assaults," Appellee's Br. at 35 n.5, this argument is without merit. There is no evidence from the statute itself or the legislative history that § 46504 is intended only for "serious assaults" as opposed to other ones.

Turning again to the three jury instruction sources, the two court-offered model jury instructions are in agreement that an "assault" for the purposes of § 46504 need not be by violent force, but only needs to be a forcible touching. *See 11th Circuit Instructions*, Instruction 118; *D.S.C. Instructions*, 601. The national treatise does indicate

---

[6] We thus do not address whether "intimidation" as used in the statute would involve the use, attempted use, or threatened use of physical force.

16

that an assault under § 46504 is an act "with force and violence," *Modern Instructions*, Instruction 13-11, but also notes that "[t]he definition of assault is in general use, and is similar to the charge used in cases involving assaults on federal officers," *id.* at Instruction 13-11 cmt. Looking at the statute prohibiting assaults on federal officers, that statute authorizes conviction of anyone who "*forcibly* assaults, resists, opposes, impedes, intimidates, or interferes with [any federal official] while engaged in or on account of the performance of official duties." 18 U.S.C. § 111(a)(1) (emphasis added). Multiple courts after *Johnson I* have found that even this offense—which uses the word "forcibly"—is categorically not a crime of violence because "the government need not prove, and an adjudicator need not find, that the offense involved *violent* force capable of causing physical pain or injury." *United States v. Dominguez-Maroyoqui*, 748 F.3d 918, 921 (9th Cir. 2014) (emphasis added); *see also United States v. Taylor*, 848 F.3d 476, 494 (1st Cir. 2017) ("It is possible to commit simple assault under § 111(a) without using violent force."), *cert. denied*, No. 16-9137, 2017 WL 2119452 (mem.) (U.S. June 12, 2017); *United States v. Hernandez-Hernandez*, 817 F.3d 207, 213 (5th Cir. 2016) (explaining that § 111(a) can be violated without any physical contact or contact that "does *not* require a showing of bodily injury or use of a deadly weapon"); *cf. United States v. Hopkins*, 310 F.3d 145, 152 (4th Cir. 2002) (discussing an argument that conviction under 18 U.S.C. § 111(a) would not support a conviction for using a firearm in connection with a crime of violence and appearing to accept that premise, but rejecting the argument for other reasons).

17

Thus, it is clear that "assault" need only be a forcible touching, and there is no evidence that it needs to rise to the level of violent force as defined in *Johnson I*. Because flight crew interference in violation of 49 U.S.C. § 46504 criminalizes forcible touching, it cannot categorically be a crime of violence under the force clause of 18 U.S.C. § 16(a). As such, we conclude that the MVRA is inapplicable here, and that any restitution order should have been considered discretionary under the VWPA.

b.

Nonetheless, the government urges us to rely on the residual clause of 18 U.S.C. § 16(b), even though it did not make this argument to the district court. We decline to do so.

Assuming without deciding that the residual clause is not unconstitutionally vague,[7] the government has waived its right to rely on that clause. The government, as conceded, did not rely on the residual clause below and put forth no evidence or argument on the point. Further, the government dedicated precisely three-quarters of a page in its brief on this argument, with the essential argument contained in one sentence: "[A]ssaulting or intimidating a flight crew member or attendant during the course of a

---

[7] We note that the majority of circuits to address this question have found 18 U.S.C. § 16(b) unconstitutional in light of *Johnson v. United States* (*Johnson II*), 135 S. Ct. 2551 (2015). *See Baptiste v. Att'y Gen.*, 841 F.3d 601 (3d Cir. 2016); *Shuti v. Lynch*, 828 F.3d 440 (6th Cir. 2016); *United States v. Vivas-Ceja*, 808 F.3d 719 (7th Cir. 2015); *Dimaya v. Lynch*, 803 F.3d 1110 (9th Cir. 2015), *cert. granted*, 137 S. Ct. 31 (Sept. 29, 2016) (No. 15-1498). *But see United States v. Gonzalez-Longoria*, 831 F.3d 670, 674–79 (5th Cir. 2016) (en banc) (finding 18 U.S.C. § 16(b) constitutional). We need not weigh into this debate in this case.

18

flight, thereby interfering with the performance of their duties, is an offense that always entails a 'substantial risk' that physical force will be used." Appellee's Br. at 36.[8]

As correctly noted by Diaz, the government entirely fails to "conduct[] any sort of 'substantial risk' analysis" in this meager submission. *See* Appellant's Reply Br. at 15. We find this insufficient for the government to present the issue to us, and accordingly find the government has waived reliance on the residual clause.

* * *

In sum, we find flight crew interference in violation of 49 U.S.C. § 46504 is not a crime of violence under 18 U.S.C. § 16(a), the force clause, and as such, the MVRA should not have been applied to the government's request for restitution in this case. Rather, the appropriate statute to be applied here was the VWPA.

D.

The district court viewed restitution as mandatory under the MVRA, and as such it never endeavored to consider Diaz's ability to pay restitution as required by the VWPA. 18 U.S.C. § 3663(a)(1)(B)(i)(II). Therefore, the proper remedy is for us to vacate the restitution order and remand this matter. *See United States v. Leftwich*, 628 F.3d 665, 668 (4th Cir. 2010) (explaining that under the VWPA "a necessary condition precedent to an order of restitution under [the VWPA]" is that the court make findings about the

---

[8] The government was not short on space in this brief; the entire brief was 9,078 words out of a possible 14,000 words. *See* Appellee's Br. at 38 (certificate of compliance).

19

defendant's ability to pay); *accord United States v. Doering*, 759 F.3d 862, 867 (8th Cir. 2014) (vacating restitution and remanding for further proceedings where the court incorrectly used the MVRA rather than the VWPA to determine restitution).

However, before disposing of this appeal, one final issue presents itself to us in connection with this remedy. In addition to challenging the applicability of the MVRA, Diaz also argued below that if he must pay restitution, he should only be ordered to pay $10,869.00 rather than $22,151.77 to United Airlines based on both "United's direct costs and Mr. Diaz's financial condition." Appellant's Br. at 5. However, an award of partial restitution on the basis of Diaz's financial condition is not permitted under the VWPA. Although we have made this point clear for crimes that fall under the MVRA, *see United States v. Alalade*, 204 F.3d 536, 540–41 (4th Cir. 2000), the language of our prior cases is somewhat unclear as to crimes that fall under the VWPA, necessitating clarification here.

The VWPA provides that 18 U.S.C. § 3664 governs how orders of restitution are issued and enforced. 18 U.S.C. § 3663(d). As we explained in *Alalade*, § 3664 was amended at the time the MVRA was enacted to "completely delete[] the language of the VWPA affording the district court discretion . . . to consider any factor it deemed appropriate in determining the amount of restitution to be ordered, and replaced it with language requiring the district court to order restitution in the full amount of loss to each victim as determined by the district court." 204 F.3d at 540 (citations omitted); *compare* 18 U.S.C. § 3664(a) (1994) (providing that "in determining whether to order restitution under section 3663 of this title and the amount of such restitution," the court "shall consider . . . the financial resources of the defendant") *with* 18 U.S.C. § 3664(f)(1)(A)

20

(Supp. II 1997) (requiring that "the court shall order restitution to each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant").[9]  Accordingly, we have held that a district court lacks discretion to reduce the amount of restitution to anything "less than the full amount of each [victim]'s loss." *Alalade*, 204 F.3d at 540–41.  This appropriately applies the restitution scheme as enacted by Congress.  *Accord United States v. Sizemore*, 850 F.3d 821, 827 (6th Cir. 2017) ("Courts consider the financial circumstances of the defendant in deciding *whether* to order restitution and in setting the defendant's payment schedule, but not in setting the total *amount* of restitution due to the victims." (emphases added)).

Accordingly, on remand, should the district court determine that restitution is proper, the district court must order the full amount of loss as determined by the district court.[10]

---

[9] In several of our cases, we have referred to 18 U.S.C. § 3664 as part of the MVRA.  *See, e.g.*, *Leftwich*, 628 F.3d at 668; *United States v. Roper*, 462 F.3d 336, 338–39 (4th Cir. 2006), *Alalade*, 204 F.3d at 540–41.  This is accurate in the sense that the same legislation which created the MVRA as codified in 18 U.S.C. § 3663A completely changed the language of 18 U.S.C. § 3664.  *See* Mandatory Victims Restitution Act of 1996, Pub. L. No. 104-132, tit. II, subtit. A, § 206(a), 110 Stat. 1227, 1232–36.  However, as explained, the VWPA as codified in 18 U.S.C. § 3663 incorporates 18 U.S.C. § 3664 for the procedures in issuing an enforcing restitution orders.  Thus, 18 U.S.C. § 3664 exists as a procedural statutory section, applying to *both* the VWPA and the MVRA.  *See* 18 U.S.C. §§ 3663(d) and 3663A(d).  As such, decisions of this Court interpreting 18 U.S.C. § 3664 apply in equal force to restitution orders arising under the VWPA or the MVRA.

[10] We note this does not preclude Diaz's challenge that the amount recommended by U.S. Probation Services does not accurately represent the direct costs to United (Continued)

21

## IV.

For the reasons explained above, we vacate the order of restitution and remand for redetermination of the issue of restitution.

*VACATED AND REMANDED*

---

Airlines; the statute simply mandates that the district court may not reduce the amount of restitution due to Diaz's alleged indigency.